Mr. Bachrach, are you ready to proceed? Thank you, Your Honor. Good morning. May it please the Court? Joshua Bachrach. I represent the appellant, Reliance Standard, and I'd like to reserve three minutes of time for rebuttal. We're appealing from the district court's decision that Mr. Carlisle was eligible for coverage at the time of his claimed disability. That decision is contrary to the language in the policy, as well as decisions from this court. The facts here are largely not in dispute. On March 21, 2016, Mr. Carlisle was given his 90-day notice of termination from his employer. He was also told at that time that he did not need to return to work. Wait a minute. There's some background noise. I don't know where that's coming from. Okay. Yeah, I'm sorry. I'm not sure, Your Honor. It's like someone's sharpening a pencil. Okay, go ahead. Thank you. So Mr. Carlisle was told that he did not need to return to work after that. He was also given his remaining salary at the end of March in 2016. But Reliance Standard reached out to the employer and was told that he did return to work, even though he didn't need to, at his convenience. He also attended two seminars on behalf of his or conferences on behalf of his employer, the last one of which was on May 8, 2016. But after that date, there's no evidence that he worked at all. So Mr. Carlisle claims that he became disabled on June 9, 2016, which is about a month after he last worked. Let me just interrupt you for one minute. You say there's no evidence that he worked after May 8. But you do have the statements from the HR director that told you repeatedly that his last day was in June, June 7, I think. Well, actually, the HR director, Your Honor, said that he worked through the termination period, which ended on June 20. But we know that's not true because Mr. Carlisle himself said that he did not work after June 7. So that's a problem. We also know that there's no evidence. And I understand Mr. Carlisle doesn't punch a clock. He's not a, you know, he's a salary employee. But in the Weber case, which I'll mention at some point, there was actually emails that were provided to show that the person still worked. In this case, there's no emails, there are no letters, no phone records, no nothing. One would think at the very least that Mr. Carlisle should have been able to provide to Reliance Standard an explanation of what he did if he was in fact working in June or after May 8. He could have said, I was working on this project and here's what I was actually doing. And I was talking with this person because clearly he would have had to communicate with somebody at the policyholder. But none of that evidence exists in this case. Well, isn't his own testimony evidence where he says I worked and my last day was June 7? And his employer also says his last day was June 7? It's evidence, but it's uncorroborated. It's some form of evidence, but it's the weakest form because there's nothing to support it. And again, someone should be able to, and this claim was submitted right away. So it's not like there's a delay and what did I do? I don't remember. There was nothing submitted to show exactly what he was doing. Again, in the Weaver case, there was evidence through emails. There's another case that actually counsel cites too. And in that case, there was evidence that the person closed a deal during the time when the defendant said they weren't working. But here, there's absolutely no evidence at all of any work, but it's not just any work. Again, under this policy, he has to regularly work a minimum of 30 hours per week to maintain eligibility regularly. And there's no evidence. Mr. Bacharach, did the insurance company ask Mr. Carlisle what precisely he did after May 8? They asked for confirmation that he worked. I don't know that they specifically did to Mr. Carlisle, but they sure did to the employer repeatedly when they wrote to the employer and said, we need to know exactly what he was doing and was told that, well, he didn't punch the clock. So we don't we don't have any information. And again, you didn't ask what he was doing. You asked for his time records, his time cards, and he doesn't punch a time clock. He's a salaried employee. And we can myself and others here can attest to the fact that his last day of work was June 7th. Well, even if it was June 7th, Your Honor, and I don't think that there is the proof provided, and I think it was requested, there are multiple phone calls and emails with the employer. But even if he came in on June 7, he has to regularly work a minimum of 30 hours per week. So the question is, when did he last regularly work 30 hours per week? So if he came in on June 7th... Let me interrupt for one moment. I'm a little confused about our standard of review with respect to evidence here. This was de novo before the district court, was it not? Yes, Your Honor. So isn't it whether the district judge believed the evidence or not? Isn't our standard whether the district court was clearly erroneous? No, Your Honor. Pardon? No, Your Honor. Counsel cited to one case that he said stood for that proposition. But that case, the ERISA claims were actually dismissed at trial. The only thing on appeal that was reviewed were non-ERISA claims. Your Honor, these cases are... If it's de novo review before the district court, that means the district court is the fact finder. Isn't that right? No, Your Honor. It was decided on summary judgment motions. And in the last Mark case, Your Honor, this court said that the summary judgment motion is just the vehicle to get the issue to the court. The thing is, Your Honor, Judge Hartz, in a case like this, an ERISA case, you're dealing not with a witness, not with credibility determinations based on what you hear from a witness. You're dealing with a cold record. That's all that you have is a record. And what courts in other jurisdictions have held is in those circumstances that the district court is still not entitled to some sort of deference because this court, Your Honors, are just as capable of reading that cold record as the district court was. Then what do we do with the proposition that there is evidence that he was working in June? You say that's just not enough. How do we deal with that? If you say we decided on cold record, if it's cold record, then we have to say there is some evidence that he was working. Well, Your Honor, you're correct. There is some, his word that he was working. But how is that different from a disability case where your question is whether he's disabled? And you receive an opinion from a doctor saying he is, an opinion from a doctor saying he isn't disabled, and the court has to make a determination. So there's evidence on both sides. But the difference, I distinguish your case on the basis that we don't have any evidence that he was not working. But, Your Honor, it's his burden of proof. It's his burden to prove credible evidence. He has come forward with some evidence, both from his employer and from his own mouth. And I would submit, Your Honor, that A, that evidence is insufficient when it's just a conclusion that I was in fact working, and there's no support for it when clearly that could have been provided, and it wasn't. But more importantly, the question is he has to provide proof that he was regularly working 30 hours per week after May 8 and into June of 2016. Well, regularly working 30 hours a week in terms of whether he was full-time, you're trying to carve it out as to a specific period. I mean, there's no question this man was a full-time employee during his career with the employer. And the issue is whether regularly working 30 hours a week, if I go on vacation, am I no longer a full-time employee because that month I didn't work 30 hours per week? I mean, that doesn't make any sense. You're right, Judge McHugh, it doesn't. And that's why the word regularly working is in there, so that if Your Honor took a vacation, you wouldn't lose coverage. That is why that precise wording of regularly is in there. So he has to be regularly working, not just immediately before the claim. That's not the language in this policy. So he's got to be regularly working up till the claim? Is that your point? So the week of the claim, he has to put in 30 hours? No, even if it's the week before. How many weeks before? Your Honor, on a reasonable basis. It's a reasonable basis. When we're looking at definition of full-time under the contract, it's not looking at people that are on vacation or on sick leave. It's looking at trying to distinguish between part-time and full-time employees for the company generally. And generally, the difference is whether you work 30 hours a week or less, right? I disagree, Your Honor. The term regularly was put in there, and there are numerous cases that we cite to, and even cases that counsel cite to that support our position, that say that regularly when you put that language in there, you look literally at whether that is a regular thing that they are doing. And again, Mr. A regular thing they are doing when? It is certainly a regular thing this employee was doing up until a point. So that's my question. Okay. So then you have to include the word active. And active is defined as actually and not contemplated. And the word full-time is defined as working, not has worked in the past. So he has this continuing obligation to work on a regular basis at least 30 hours per week for the employer. And again, my question is then under your argument, if I'm on vacation and have a heart attack, I'm not covered because I didn't work 30 hours that week. That's not true, Your Honor. The question is leading up to that, were you regularly working 30 hours per week? And you would have been under that situation. What about maternity leave? That's covered. So during a maternity leave of let's say 90 days, so for three months, they're not working regularly 30 hours a week, another medical condition, they're in a car accident. No coverage? No, well, Your Honor, actually in a situation like that, they would probably be, if they're on leave due to maternity leave, they're collecting disability benefits already from the maternity leave. Would they be a full-time employee during maternity leave? Well, they have to be an active full-time employee. And the question is, well, first of all, that's not the situation and not even remotely. I'm trying to interpret the policy and whether it makes sense. It's part of how we do that. I understand, Your Honor, but I'm interpreting it as this court has in the past. So I'm looking at prior decisions from this court, including the Elsie v. Prudential case, which we cite too, which predates ERISA and is based on a common law. But the common law is like the ERISA law. And what that court said, that the person has to be actually working in order to be eligible. And I look at this court's decision in the Bartlett v. Martin Marietta case. And what that court said in that case was you could have protected yourself in this situation and required a person to be actually working if you said active. And we have the active word here. So what you find are two types of cases. You have those that say you need active, those that say you need regular. And we have both. We have the belt and the suspenders in this case, Your Honor. And I know I'm butting up against the rebuttal time, so I'd like to reserve the remainder of time. Just a minute. Yes, Your Honor. On the question of remand, why doesn't the case that the district court relied on, Spradley v. Owens Illinois hourly, why doesn't that just decide that you lose on that issue if there's a question on that? Well, because under Ray versus Ray v. Unum, this court held that when there has not been sufficient fact finding, it had case has to be remanded. And we cite to a case from the Seventh Circuit that says you don't have to hedge your bet on a court reversing the basis for your decision and decide issues that aren't present at that time. But the decision in Spradley says if you're going to raise issues as to the denial of the claim, as distinguished from the calculation of the amount of the claim, you better do it all at once. And that's the way I read Spradley. And so doesn't that mean if you lose on the liability issue, is it the only question is how much do you owe? No, Your Honor. I read it differently. I read that case as saying that you have to put all the basis. So if we denied the disability saying that you weren't disabled under the facts, but later say, oh, you know what? There's a preexisting condition exclusion. And we now rely on that. We couldn't do that. But that's not what happened here. This was you're not covered under this plan. And therefore, we didn't have an opportunity to investigate all of that. And I point out, Your Honor, there are facts that show a return to work early in the next year. And the district court itself said we did not. I did not decide that issue of whether he remained disabled throughout the 90 day elimination period because you didn't raise it. Now, that's not what the district court said. And I know I'm over your honor. I'd like to save time for rebuttal. Answer the question. We'll see about rebuttal. I appreciate that, Your Honor. So the district court said we said it should be remanded. But what the district court said was I never said that you I never said that. The only issue I decided was the one of eligibility on the plan. I didn't decide that he was disabled. So since the court didn't decide that issue, somebody has to. And it has to be reliance on that. The district court said that issue isn't before me. So that's not what you raised before me. Right. I mean, I guess you can go down and you could file another claim or another case. But the district court said that issue is not before me. And besides that, you conceded that he was eligible. That he's 100% disabled. That's a false statement, Your Honor. Well, this is a quote. Let me quote what you said. We are not disputing the fact that as of June 9th, 2016, Carlisle would have been deemed totally disabled under the policy. I mean, that's a true quote. It is. But they are saying that as of June 9th, but he had to remain disabled for 90 consecutive days to be eligible for benefits. And there was no determination that that was made. And again, Disabled is capitalized and it's a defined term in the policy, which includes the 90 day period. Understood your honor. But again, there was no need for Elias to determine that there's no discussion of the medical evidence. So that was a statement that may, maybe the person who wrote the letter stated more than they should have, but that wasn't the intent. I can tell you that your honor. I'm looking at the courts. Order. After you move for reconsideration, it says. The court's order and judgment reflects only the relief requested in Carlisle's motion for summary judgment. Which was to conclude Carlisle was an active full-time employee and thus eligible for benefits. The court made no determination regarding what defendants owe under the terms of the policy. Any challenge to the court's order and judgment on that basis are misplaced. The extent defendants are challenging Carlisle's continuing disability. That is not an issue for remand, but would involve new proceedings. I gather. From that, that the court is saying you're not foreclosed. From having a dispute with Mr. Carlisle regarding how much you owe him. But, and, but the court has not decided that. Am I, am I reading that correctly? You are your honor. The reason that we. Still included that as an issue was the court in first order. Refused a remand. So the case is sort of the claims in limbo. It's not at the court anymore, but the court said, I'm not remanding it back to you for any further. Investigation. So we just needed some clarification on that issue. Okay. Thank you. Mr. Dushku. Yes. Alexander Dushku for. The plaintiff, David. Carlisle. And may it please the court. Good morning, your honors. I think the colloquy has. Ventilated many of the issues, many of the weaknesses. Of reliance's position. Let me point out just a few things. Regarding evidence that he was at work. There is plenty of evidence that he was at work, including. In June. In June of 2017. Their own letter of, of June 12th, 2017. Where they deny Mr. Carlisle's administrative appeal. Repeatedly. On at least six occasions. Acknowledges. That, you know, you ceased work due to symptoms. Of an eventual diagnosis of prostate cancer. As of June 9th. And repeatedly they go through and admit, you know, they, they, you know, the date bounces around between June 7th, 8th and nine. But repeatedly. They admit that he was at work. During June. So let me ask you this. If he was at work for a half hour. In June and that's all. Is that enough? For him to be an active full-time employee under the policy. Yes. And how do you, how do you come to that conclusion? The first of all, taking the ladder of those two terms. Full-time employee. As, as the briefing has refined this down. You know, you, you have to be a full-time employee, even, even reliance. That's the, what's going on there. Is that you have to, in the course of your regular, you know, what your regular schedule is. What you were doing regularly. You know, are you still kind of in the realm of, of, of what that is. And so it doesn't require that you work every single week. The cases, the Bartlett case, for example. Involves someone who had, who had not gone back to work for for a couple of months. And was still considered a regular full-time employee. But in that case, the court, I mean, you know, we said, look, if you wanted to limit your coverage, you, you could have. Added active to the requirement. I mean, we basically said, Hey, this is how you do it. Yeah. What you said was if the defendant wanted to limit benefits to regular full-time employees who were actively working and it could have done. So, so that, so that language actively at work or active work, it actually appears in this policy. As a defined, as a defined term, but it doesn't, but the word active is not so defined. And in the tester case, which this court endorsed in its Weber decision, the court dealt with that very same, that very same issue and found that the term active in connection with full-time employee, that the word active was ambiguous. And then in that case, they went on to, to, to demonstrate, to, to, to hold that an employee who had, whose last day of work was in January, January 8th, and who died in February was still an active full-time employee at the time of, of her death. And, and here's what the court said in tester, an employee would reasonably expect that his coverage continues while he regularly works for the company. Even if he is home with the flu or injured in a car accident. And that gets back to judge McHugh, your colloquy that you had in that regard, the term active really means are you, are you doing anything to advance the interests of the employee? You have to be, you, you need to be full-time. Is that correct? Yes. Within the meaning, within the meaning of the policy. Yes. And the first month that you're not full-time is the last month of coverage. If you're not, if you're not working full-time in February, you're still covered in February. You're just not covered in March. If you're not full-time then, is that correct? Yes. Okay. That's how I understand it. Now, when he was told, you don't have to come in for the, your last 90 days at that time, if that was all we knew, are you saying he would be a full-time employee because of what he had done before he was told you don't have to come in anymore? What I would say is that he remained a full-time employee because he was not terminated. He was still working. Okay. So, well, so even if he put in no work his last 90 days, he would say there's coverage because he was still a full-time employee. Yeah. I'm not prepared to die on the Hill over, over that proposition because he did, he did come in repeatedly through his. Well, let's assume that he's not, I'm trying to figure this out. So let's say he's not, he's no longer a full-time employee once he's told you don't have to come in at all, but he can still satisfy it. If he's his regular work week is 30 hours or more because he actually comes in as a, as Reliance has admitted, there were some weeks even in May when they assume he must have worked 30 hours because he was at a conference and it's hard to be at a conference without participating for 30 hours. But that ended by mid-May as I recall was the conference. So there's no evidence he worked anymore in, in May after the middle of May. Then it seems to me we'll answer this. I shouldn't say it seems to me, explain to me why he is still has a regular work week of 30 hours or more. If he never, if he's told you don't have to come in. And in fact, he didn't come in for the last two weeks of May. Why, why, why does, why did that coverage not end at the end of May as a result? Your honor, he did come in. The evidence indicates he did come in during his notice period. So he was a full time. Yeah, I know during the notice period and we're, and we're okay with the first half of May when he attended a conference, but in at least one 30 hour week, but either you'd have to rely on the fact that he was working full time just because he hadn't been fired, regardless of whether he showed up or you'd have to. And if you're not relying on that, then you have to show that he did have a regular work week of 30 hours or more during that 90 day period. But the last evidence of his working a 30 hour week is for a week in the first half of May. So why was he under what theory was he, did he still have a regular work week of 30 hours or more the last couple months of May? What, what's your theory there? Yeah. The notion, the cases treat the notion of a regular work week as being what it was that that employee has done, especially historically. It doesn't have to be every single week. Certainly not while the person is, is, is, is ill. Right. And, and what we have in the evidence, I want to, I want to push back just a little bit. Ms. Miller says, quote, I along with other employees can confirm that he had worked in the office throughout his notice period. So that was, that was from the time he was given notice all the way until June 7th. Through June 7th. And that was the repeated response of the employer in response to Reliance's questions. Regardless of whether he worked with a 30 hour week, he actually, he actually worked a 30 hour week. Yes, it is enough. The evidence is that he was doing what he had, what he had always done. He was a vice president of marketing. He was in charge of drumming up business. He was, he was never a, a, a, a time puncher. He was, he was working and he's, he's a highly salaried employee and he was working to drum up business as he had before. His hope was that he could do what he did in 2014 where there was a downturn and that is drum up business and get, you know, get things going. And so he was working, he was working in may. That's where he did go to conferences and he continued to work. That's what the evidence shows from his Miller. He continued to work until his, his, his final day, which was June 7th. And I think that is an, and that is sufficient when they're talking about, when they're talking about a regular, what I have a problem with is that there's a, there's one really distinctive feature in this case that I don't think was in any of the cases cited. And that was, he was specifically told, you don't have to work your last 90 days. So given that, I would think there has to be evidence that regardless of what he was doing before that 90 days, that he was regularly expected to, or regularly doing a 30 hour week. Your honor, he was not terminated. He was still a full-time employee during his notice period. That was by his employment contract. So they had to give him notice. He was a full-time employee all the way until June 20th of 2016. And he continued to work until June 7th when his disability rendered him unable to do so. And I don't, I've not seen anything in, in the cases that suggest that, you know, that a comment that, that, that he didn't have to come in means that he wasn't still a full-time employee. He was coming in the, the Ms. Miller of the, of the HR department there indicated that quote, he has been eligible since his date of hire with no gaps in coverage. And that's volume two, a 582. And so he continued to work. He was still a full-time employee. He continued to do what it was that he had done before. And by the way, this is an important point. Reliance admits that he, that he was covered as of the end of May. So, so they're actually not pushing the point that you're pushing judge Charles. They admit that he was covered as a, as an active full-time employee through May. Well, did I say anything to the cut that suggests otherwise I was saying it would, if he didn't work the 30 hour week in the last part of May, that wouldn't prevent his coverage in May. It would prevent his coverage in June. It's the last month. If you, you no longer have coverage. Once you go a month, once during, if during one month, you were not a full-time employee, your coverage ends at the end of that month. Yeah. If you cease to be an active full-time employee during a particular month, your coverage. They admit that he was. They're arguing his coverage ended in June, right? That, because he made his claim in June and Reliance rejected it. Is that, am I right on that? I understand Reliance to be making the argument that his coverage ended in May. Right. Okay. He was not covered in June. And my point here, judge Hartz is that he continued to do in June for the first seven days, the same things, same types of things that he was doing in May. How do we know that? I mean, you know, you've got a question for his time records and then you've got a response that there are no time records and you've got the I think Ms. Miller indicating that he was working throughout the notice period, but there's no that I found information about what he was doing during that period, nor do, nor do I see anything, contrary to opposing counsel's argument that indicates that the insurance company asked for it, but, but I don't see anything that says other than the conferences, which we have evidence of, I don't see anything that says what he was doing. We have we have a question from Reliance and this is volume two, a five 82. These are emails, quote, please confirm last full-time active day work for Mr. Carlisle. And, and again, quoting the, essentially quoting the language from their own policy. And the response is and there are a couple other questions asked. He chose to come into the office at his convenience during the months leading up to his termination date. His last day work was June seven. So her response to the question, please confirm last full-time active day work for Mr. Carlisle was, was June seven. But that's not responsive to what we were talking about, which is what specifically did he do during the first week of June? I think that's what judge hearts was saying. Yes. I see that I'm about to run out of time. May I respond? He was doing the same thing he had always been doing. Where where's the evidence point me to the record. Well, we don't have any specific, I don't have a specific site for you other than that. He came into the office and worked throughout his notice period. That is the, that is what Ms. Miller said. Now they never asked him. They never picked up the phone and called. They have a fiduciary duty. Never picked up a phone and said, Hey, what have you been doing? They didn't do that. They asked for specific hours. They didn't ask for whether he worked over 30 hours. And so he was our understanding is he was, he was drumming up business for, you know, for the company and was hoping to be able to be able to revive and help the company to move forward. Anybody on the panel have any further questions? No. Mr. Backtrack, I'm going to give you 30 seconds, but you're going to stop at 30 seconds sharp. Thank you, Your Honor. Just quickly. Counsel said that the employer said that he worked throughout the notice period, but the, the employer said at his convenience, at his convenience does not equate to working regularly, working 30 hours a week. That's the key question here. As Your Honor has stated. And also I think it's important to note as Your Honor judge Hart said that there is no evidence in judgment queue. There is no evidence of exactly what he did. He could have provided that evidence. Thank you, Your Honors. Thank you, Counsel. Interesting case. Cases submitted and counselor excused.